UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

| | |
|---|---|
| JORDAN HINTON, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :  24-CV-975 (SFR) |
| | : |
| STATE OF CONNECTICUT ET AL., | : |
| | : |
| Defendants. | : |

---

**INITIAL REVIEW ORDER**

*Pro se* plaintiff Jordan Hinton, an individual currently serving a sentence[1] in Connecticut Department of Correction custody at Corrigan-Radgowski Correctional Center ("Corrigan"), filed this action under 42 U.S.C. § 1983. He names twelve defendants: the State of Connecticut, Daniel Dougherty, Angel Quiros, Doctor Pillai, Nurse Biela, Nurse Lisa C., Nurse Rose W., Janine Brennan, and John Does 1-4. He brings claims under the First, Eighth, and Fourteenth Amendments, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA"), and state law tort claims of medical malpractice and negligence alleging that Defendants acted with deliberate indifference to his medical needs and subjected him to unreasonable and unlawful conditions of confinement considering his disability. Hinton sues these Defendants in their individual and official capacities, and he seeks monetary damages and injunctive and declaratory relief.

---

[1] Information on the Department of Correction website shows that Hinton was sentenced on July 19, 2023. See https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=341437 (last visited December 2, 2025). I may take judicial notice of matters of public record. *See, e.g.*, *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425(KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).

1

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, I must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

I have thoroughly reviewed all factual allegations in the complaint and conducted an initial review pursuant to 28 U.S.C. § 1915A.[2] Based on my initial review, I order as follows.[3]

---

[2] It is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A complaint that includes only "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

[3] I limit my initial review under 28 U.S.C. § 1915A to Hinton's federal law claims. That is because the core purpose of an initial review order is to make a speedy initial screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then I would decline to exercise supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367. On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. More generally, my determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment.

## I. BACKGROUND

### A. Factual Background

I do not include all allegations from the complaint, and instead I summarize only those facts necessary to provide context for initial review.

In his complaint, Hinton maintains that he is disabled after suffering a catastrophic injury to his leg, ankle, and foot. Compl., ECF No. 1 ¶¶ 15-16. Because of his disability, he submits that he cannot walk without the aid of crutches and cannot shower, use the bathroom, or dress without significant difficulty. *Id.* ¶ 15.

Although Hinton is now housed at Corrigan, at least some of the conduct at issue occurred when Hinton was housed at MacDougall-Walker Correctional Institution ("MacDougall"). *Id.* ¶¶ 6, 20. It is not clear how much of what follows occurred at MacDougall.

Hinton claims that, while he was on crutches and in the infirmary, Defendant Parsons ordered Hinton to be removed from the infirmary and to be placed in the Restrictive Housing Unit ("RHU"). *Id.* ¶ 17. Hinton submits that he was not cleared to be placed in the RHU, and that the RHU was infested with insects, extremely cold, and unsanitary. *Id.* ¶¶ 17, 22. Hinton says that Defendant Nurse Biela admitted that Hinton was not cleared for RHU placement and that his conditions could not be managed in RHU yet nonetheless allowed Hinton to be forcibly placed in RHU. *Id.* ¶ 22. RHU did not have handicap-accessible showers, and Hinton claims that Defendants conspired to refuse to bring him to the handicap-accessible showers. *Id.* ¶ 18. Hinton recounts that he wrote to Defendants Dougherty, Quiros, Brennan, and unidentified others to "notify[] them of the risk of injury," but Defendants did not respond, "provide any

remedy[,] or act at all," and instead "provoked . . . , instigated[,] and initiated" the risk. *Id.* ¶ 19.

Hinton claims that on June 4, 2023, "on advice" from Defendants Nurse Lisa C., Nurse Rose W., and Dr. Pillai, Hinton was instructed to shower in a different unit in MacDougall, "even though all [D]efendants were aware the [P]laintiff was on crutches and could not walk." *Id.* ¶¶ 20. Thereafter, Hinton showered and "slipped, fell, and was injured" and lost consciousness, sustaining a concussion. *Id.* ¶ 21. He was transported to a hospital for treatment. *Id.* ¶ 21.

Hinton says the supervisory Defendants failed to "properly train subordinate staff," and destroyed and "spoilate[d] a vast amount of evidence" with an intent to "cover up and hide" Defendants' misconduct. *Id.* ¶¶ 23, 28. And he claims that these Defendants, despite knowing about Hinton's disability, have not helped him to receive physical therapy and rehabilitative treatment for over a year. *Id.* ¶¶ 24, 28. This lack of treatment has resulted in Hinton experiencing "constant pain, suffering, and anguish." *Id.*

As recourse for these harms, Hinton seeks both compensatory and punitive monetary damages, a declaratory judgment, and injunctive relief. *Id.* at 9.

## II. DISCUSSION

### A. Official Capacity Claims

Hinton's complaint indicates that he sues Defendants in both their official and individual capacities. *Id.* ¶¶ 7-13.

First, to the extent Hinton asserts official capacity claims for monetary damages against Defendants (all state employees), those claims are dismissed as barred by the Eleventh Amendment. *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Second, Hinton seeks to sue the State of Connecticut for monetary damages under 42 U.S.C. § 1983. As the Eleventh Amendment prohibits claims for money damages against states or state actors, *Kentucky*, 473 U.S. at 169-70, a state's waiver of sovereign immunity and consent to be sued must "be unequivocally expressed," *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). Here, Hinton sues in part for constitutional violations under 42 U.S.C. § 1983. The U.S. Supreme Court has held that Congress did not abrogate the Eleventh Amendment by enacting section 1983. *See Quern v. Johnson*, 440 U.S. 332, 345 (1979). And there is no indication that the state has consented to suit in this matter. *See Watson v. Connecticut*, No. 3:20-cv-00544 (JAM), 2020 WL 3404066, at *1 (D. Conn. June 19, 2020) (citing *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004)). Thus, the state is not a proper Defendant with respect to the § 1983 claims. However, this analysis does not extend to Hinton's ADA and RA claims, and, in fact, the state may be a proper Defendant for those claims.

Third, Hinton may proceed for injunctive or declaratory relief against a defendant in his or her official capacity only to the extent he alleges an ongoing constitutional violation. *See Va. Office for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254-55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846-47 (1994)).

Hinton maintains that there exists an ongoing constitutional violation as he claims he has been denied access to a handicap-accessible shower and access to physical therapy. *Id*. ¶¶ 19, 24, 28. On this record, it is not clear whether Hinton is still in the RHU, but to the extent

5

he is, those claims may proceed. However, to the extent that Hinton attempts to bring official capacity claims against MacDougall employees, those requests are moot because he is no longer housed there. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (a plaintiff's transfer from a correctional facility generally moots claims for declaratory and injunctive relief against officials at that facility).

### B.      **Personal Involvement**

Before proceeding, I must consider whether Hinton has sufficiently alleged claims against any defendant in his or her individual capacity for damages. A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (recognizing that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983"). This is true with respect to supervisory officials as well. *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) (holding that "a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").

Here, Hinton has not alleged any facts in the body of his complaint about conduct by Defendants Quiros, Dougherty, and Brennan, except to say that he wrote to notify them to the risk of injury he may face if he is not given access to a handicap-accessible shower. Compl. ¶ 19. Additionally, Hinton further makes no actionable claims against John Does 1-4. Thus, Hinton may not proceed against these Defendants with respect to that claim.

6

C. **Eighth Amendment: Medical Treatment**

On the merits, Hinton alleges that Defendants acted with deliberate indifference toward him, specifically with respect to the medical treatment required for his injured leg, ankle, and foot. Compl. ¶¶ 16, 25-26.

Deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

The test for deliberate indifference includes both objective and subjective components. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied sub nom.*, *Foote v. Hathaway*, 513 U.S. 1154 (1995). The objective component requires Hinton to "show that he actually did not receive adequate care and that the inadequacy in medical care was sufficiently serious." *Valdiviezo v. Boyer*, 752 F. App'x 29, 32 (2d Cir. 2018) (summary order). I must "examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 280 (citation omitted).

If a plaintiff was completely deprived of medical care, "courts examine whether [his or her] medical condition is sufficiently serious." *Id.* (citation omitted). If the plaintiff received medical treatment but it was inadequate, "the seriousness inquiry is narrower," and "focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Id.* (quotation marks and citation omitted).

I construe Hinton's claim most liberally and view his position that he did not receive physical therapy as a lack of medical treatment generally. In this circumstance, "[t]here is no need to distinguish between a prisoner's underlying serious medical condition and the

7

circumstances of his serious medical need." *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003) (quotation marks omitted). The Second Circuit has identified factors relevant to the seriousness inquiry, including "whether a reasonable doctor or patient would find it important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." *Young v. Choinski*, 15 F. Supp. 3d 172, 182 (D. Conn. 2014) (citations, alterations, and quotation marks omitted). Courts also consider whether the denial of medical care results in further injury or significant pain. *See id.*

For purposes of initial review, Hinton's allegations have satisfied this element. Hinton alleges his "catastrophic" leg injury "limits and impairs several of his major life activities." Compl. ¶¶ 15-16. He says he cannot walk without the aid of crutches, and cannot shower, use the bathroom, or dress without significant difficulty. *Id.* at ¶ 15. Moreover, courts have held that lack of access to physician-recommended physical therapy can be the basis for an Eighth Amendment deliberate indifference claim. *See Figueroa v. Corr. Managed Health, Care*, No. 3:16-cv-120 (VAB), 2016 WL 7428191, at *4 (D. Conn. Dec. 23, 2016); *Wortham v. Plourde*, No. 3:12-cv-1515 (DJS), 2012 WL 6055320, at *3 (D. Conn. Dec. 5, 2012). I therefore conclude Hinton's allegations sufficiently show that Hinton's medical condition is serious, at least at this early stage of the case.

Next, under the subjective requirement of the deliberate indifference test, a defendant must have been aware that his or her actions or inactions would cause a substantial risk of harm to the plaintiff. *See Salahuddin*, 467 F.3d at 279-80 (citation omitted). "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Id.* at 280. Recklessness requires more than negligent conduct. "[M]ere disagreement over the proper treatment does not create a constitutional claim," and "negligence, even if it constitutes

8

medical malpractice, does not, without more, engender a constitutional claim." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). Medical malpractice "may rise to the level of deliberate indifference when it involves culpable recklessness, i.e., an act or failure to act . . . that evinces a conscious disregard of a substantial risk of serious harm." *Charles v. Orange Cnty.*, 925 F.3d 73, 87 (2d Cir. 2019) (alteration in original) (internal quotation marks and citation omitted).

Here, Hinton claims that he was denied rehabilitative care for over a year. Compl. ¶¶ 24, 28. He does not, however, attribute this decision to any specific Defendant. Without allegations specific to any one Defendant—especially as to their purported knowledge—I conclude that Hinton has not sufficiently pleaded facts to support an Eighth Amendment medical indifference claim. Hinton's deliberate indifference claim as to his medical treatment is therefore dismissed.

### D.   **Eighth Amendment: Conditions of Confinement**

I also evaluate Hinton's Eighth Amendment deliberate indifference to his health and safety claim in light of his placement in the RHU and, more specifically, the inaccessibility of the showers. Compl. ¶ 18.

Proving a violation of his Eighth Amendment rights for deliberate indifference to health or safety requires Hinton to show (1) that he was "incarcerated under conditions posing a substantial risk of serious harm" and (2) the prison official that put him in those conditions was deliberately indifferent to his health or safety. *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020). Meeting the second prong requires that a defendant is "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

As I stated above, Hinton has not pleaded sufficient facts to show the personal involvement of Defendants Quiros, Dougherty, and Brennan in the failure to attend to his serious need for assistance in the form of handicap-accessible showers. I will, therefore, dismiss this claim without prejudice as to those Defendants.

But as to Hinton's deliberate indifference claims against Defendants Dr. Pillai, Lisa C., and Rose, those claims may proceed. Hinton submits that he was instructed "under advice" by Defendants Dr. Pillai, Lisa C., and Rose W. to shower in a unit at MacDougall that did not have handicap-accessible showers, resulting in him slipping and injuring himself. Compl. ¶¶ 20-21. Additionally, Hinton claims that Defendant Biela knew that Hinton's condition could not be managed in the RHU, but Defendant Biela allowed him to be housed there anyway. *Id*. ¶ 22.

I conclude that Hinton has identified facts to suggest that the conditions of the showers posed a substantial risk of harm to his safety and well-being. For initial review purposes, Hinton has sufficiently alleged that Defendants Dr. Pillai, Lisa C., Rose W., and Biela acted with conscious disregard to the risk of harm posed to Hinton by the conditions of the showers, given that Hinton maintains that he identified risks to Defendants but was ignored. *See Lenti v. Connecticut*, No. 3:20-cv-127 (SRU), 2020 WL 2079462, at *5 (D. Conn. Apr. 30, 2020) (concluding on initial review that the plaintiff had alleged plausible Eighth Amendment claim based on serious risk to his safety due to the condition of his cell and his lack of a wheelchair).

Hinton may therefore proceed on his Eighth Amendment claim against Defendants Dr. Pillai, Lisa C., Rose, and Biela in their individual capacities related lack of access to handicap-accessible showers.

E.  **ADA/Rehabilitation Act**

Next, although Hinton does not specifically bring a claim under the ADA or the RA, I read his complaint broadly and examine whether a claim might exist on those bases.[4] Because the standards under both the ADA and the RA are, for present purposes, the same, I will evaluate the claims together. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a cognizable ADA claim, Hinton must allege facts establishing three factors: (1) he is a qualified person with a disability, (2) defendants are considered an entity subject to the ADA, and (3) he was denied the opportunity to participate in or benefit from an institutional program, service, or activity, or otherwise discriminated against because of his disabilities. *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016). A qualified individual can base a discrimination claim under Title II of the ADA on one of three available theories: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Lenti v. Connecticut*, No. 3:20-cv-127 (SRU), 2020 WL 4275600, at *8 (D. Conn. July 24, 2020) (quoting *Fulton v. Goord*, 591 F.2d 37, 43 (2d Cir. 2003) (internal quotation marks omitted)).

---

[4] Hinton brings a general "failure to train and supervise" claim based on ADA violations. But because there is no general supervisory liability, *Tangreti*, 983 F.3d at 620, the Court construes this to be an ADA claim.

11

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or major life activities" of an individual. 42 U.S.C. § 12102(1)(A). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "[I]n assessing whether a plaintiff has a disability, courts have been careful to distinguish impairments which merely affect major life activities from those that *substantially limit* those activities." *Troeger v. Ellenville Cent. Sch. Dist.*, 523 F. App'x 848, 852 (2d Cir. 2013) (quoting *Ryan v. Grae & Rybicki P.C.*, 135 F.3d 867, 870 (2d Cir. 1998)) (internal quotation marks omitted) (emphasis added).

Relevant to his ADA and RA claims, Hinton alleges that he is unable to use a standard shower because of his leg, ankle, and foot disability, that he was placed in the SHU without access to a handicap-accessible shower, and that he fell in the standard shower because he was denied that access.

In evaluating Hinton's claim, I will first assume, for purposes of initial review, that Hinton is disabled within the meaning of the ADA, thereby satisfying the first element. (That said, Hinton will need to eventually present evidence showing that he is a qualified individual with a disability to ultimately prevail on any ADA claim.)

Second, I conclude that the ADA applies to state prisons. *See Harris v. Brennan*, No. 3:21cv906 (MPS), 2021 WL 4593611, at *2 (D. Conn. Oct. 6, 2021) (citing *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S 206, 209 (1998) ("ADA 'includes State prisons and prisoners within its coverage'")).

Third, to prove the last element, there are three potential theories Hinton may invoke: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton*, 591 F.3d at 43; *see also Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003).

Here, Hinton maintains that the lack of a handicap-accessible shower resulted in him sustaining an injury when he attempted to use a standard shower while he was in the RHU. Compl. *Id*. ¶¶ 20-21. Hinton further submits that he wrote to Defendants Quiros, Dougherty, and Brennan for assistance in this respect, which I construe, at this stage of the case, to be requests for reasonable accommodations. *Id*. ¶ 19. Thus, because Hinton has plausibly alleged ADA and RA claims against Defendants State of Connecticut, Quiros, Dougherty, and Brennan, the ADA and RA claims will proceed only as to those Defendants.

Because ADA and RA claims are not cognizable against prison officials in their individual capacities, *see Brown v. Hannah*, No. 3:22-CV-105 (OAW), 2022 WL 487989, at *4 (D. Conn. Feb. 17, 2022) (citations omitted), the claim will proceed against Defendants State of Connecticut, Quiros, Dougherty, and Brennan in their official capacities only. My conclusion in this respect is for initial review purposes only, and it is subject to further development of the record, which may reveal that Hinton is not entitled to prospective injunctive relief because he is no longer housed in RHU without access to handicap-accessible showers.

I also examine whether Hinton may pursue money damages against these Defendants in their official capacities, which is permissible in limited circumstances. *See United States v. Georgia*, 546 U.S. 151, 159 (2006); *see also Lenti,* 2020 WL 4275600, at *7. However, because there is some dispute about the proper application of this test, *see Lenti*,

13

2020 WL 4275600, at *7 n.6, I will allow Hinton's claims for money damages to proceed for further development so that I may decide this issue on a more fulsome record.

    F. **First and Fourteenth Amendments**

Finally, although Hinton references the First and the Fourteenth Amendment briefly in his complaint, he identifies no facts that support claims under either Amendment. Compl. ¶ 1. At most, Hinton claims that the supervisory Defendants "hid[], destroy[ed,] and spoilat[ed]" evidence for the "sole purpose" of "cover[ing] up" Defendants' conduct. *Id.* ¶ 23. However, Hinton makes this conclusory statement without factual allegations to support it. Therefore, to the extent Hinton brings a First or a Fourteenth Amendment claim, those claims are dismissed.

## III.   CONCLUSION

Based on the foregoing, I issue the following orders:

Hinton may proceed on his Eighth Amendment deliberate indifference claim against Defendants Dr. Pillai, Lisa C., Rose W., and Biela in their individual capacities based on his claimed lack of access to handicap-accessible showers.

Hinton may proceed on his official capacity claims against Defendants State of Connecticut, Quiros, Dougherty, and Brennan in their official capacities based on his ADA and RA claims.

I DISMISS the following claims: Hinton's First, Eighth Amendment medical indifference, and Fourteenth Amendment claims, and all claims against John Does 1-4.

**Hinton has two options as to how to proceed in response to this Initial Review Order:**

(1) If Hinton wishes to proceed immediately **only** on the claims set forth above, he may do so without further delay. If Hinton selects this option, he shall file a notice on the

docket on or before **January 5, 2026**, informing the Court that he elects to proceed with service as to the claims set forth in this paragraph. The Court will then begin the effort to serve process on Defendants named above in their individual and/or official capacities as described above.

(2) Alternatively, if Hinton wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed in order to attempt to state a viable claim, he may file an amended complaint by **January 5, 2026**. **An amended complaint, if filed, will completely replace the complaint, and the Court will not consider any allegations made in the original complaint in evaluating any amended complaint.** The Court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Hinton elects to file an amended complaint, the complaint this Initial Review Order addresses will **not** proceed to service of process on any defendant.

If the Court receives no response from Hinton by **January 5, 2026**, the Court will presume that Hinton wishes to proceed on the complaint as to the claims permitted to go forward in this Initial Review Order, and Hinton will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Changes of Address.** If Hinton changes his address at any time during the litigation of this case, Local Rule 83.1(c)2 provides that he **MUST** notify the Court. Failure to do so can result in the dismissal of the case. Hinton must give notice of a new address even if he is incarcerated. Hinton should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Hinton has more than one pending case, he should indicate all the case numbers in the notification of change of address. Hinton should also notify Defendants or counsel for Defendants of his new address.

**SO ORDERED.**

New Haven, Connecticut
December 5, 2025

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge